IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KEITH A. LEPAK, MARVIN RANDLE, DAN CLEMENTS, DANA BAILEY, KENSLEY STEWART, CRYSTAL MAIN, DAVID TATE, VICKI TATE, MORGAN MCCOMB, AND JACQUALEA COOLEY, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF IRVING, TEXAS, <br><br> Defendant, <br><br> v. <br><br> ROBERT MOON, RACHEL TORREZ-MOON, MICHAEL MOORE, GUILLERMO ORNELAZ, GILBERT ORNELAZ, AND AURORA LOPEZ <br><br> Defendant-Intervenors. | § § § § § § § § § § § § § § § § § § § § § § § | C.A. NO. 3:10-cv-00277-P |

## PLAINTIFFS' SECOND AMENDED COMPLAINT

TO THE HONORABLE COURT:

      Plaintiffs Keith A. Lepak, Marvin Randle, Dan Clements, Dana Bailey, Kensley Stewart, Crystal Main, David Tate, Vicki Tate, Morgan McComb, and Jacqualea Cooley, (collectively "Plaintiffs") file this Second Amended Complaint against Defendant City of Irving, Texas ("Irving" or the "City"), and in support thereof would respectfully show the Court as follows:

## I.    INTRODUCTION

1.   This is an action challenging the constitutionality of Irving's recently-adopted electoral plan for single-member city council positions. Under the threat of a judicial fiat, Irving discarded its existing at-large arrangement and created six single-member districts of ostensibly equal population size. One of these districts was specifically designed to be a majority Hispanic district. To "equally" apportion Irving's population into these six districts, however, the City used raw population numbers alone, deliberately failing to equalize citizens of voting age populations within each district. In so doing, the City created a district (the majority Hispanic district) where the number of voting age citizens is roughly half the number of voting age citizens in several other districts. Because it takes a majority in each district to elect a city council member, this means that the council member from the majority Hispanic district can be elected on the basis of approximately half as many votes as the council members from these remaining districts. Put differently, the vote of a citizen residing in the majority Hispanic district is worth nearly twice as much as the vote of a citizen in another district just a few streets away.

2.   Irving's electoral scheme thus violates the "one person, one vote" principle of the Fourteenth Amendment of the United States Constitution, which (according to the United States Supreme Court) strictly prohibits "weighting the votes of citizens differently, by any method or means, merely because of where they happen to reside…."[1] Indeed, by adopting this electoral plan, Irving has run directly afoul of what the Supreme Court refers to as "the basic principle of representative government" – specifically, that "the weight of a citizen's vote cannot be made to depend upon where he lives."[2] Accordingly, the Plaintiffs – citizens of Irving whose votes will be substantially diluted under Irving's plan – are compelled to bring this action.

---

[1] *Reynolds v. Sims*, 377 U.S. 533, 563 (1964).
[2] *Id.* at 567.

## II. PARTIES

3. Plaintiffs are individuals who are citizens of Irving and reside and are domiciled in Districts 3, 4, 5, 6, and 7 of the current city council electoral plan.

4. Defendant City of Irving, Texas is a municipality and may be served by delivering a copy of the summons and of the complaint to the mayor, clerk, or secretary of the City of Irving, Texas, 825 W. Irving Boulevard Irving, Texas 75060.

## III. JURISDICTION AND VENUE

5. This Action arises under Article 4, Section 2, Clause 1 of the United States Constitution, and the Fourteenth Amendment thereto.

6. This Court has original jurisdiction pursuant to 28 U.S.C. 1331, 1343(a)(3) and (4).

7. Venue exists under 28 U.S.C. 1391(b) in that all Defendants reside in the Northern District of Texas, and the injuries to the civil rights of Plaintiffs are sustained in the Northern District of Texas.

8. Plaintiffs have standing to bring this suit as each resides in one of the five Irving single-member city council districts whose votes are substantially diluted under Irving's electoral plan.

9. Plaintiffs seek declaratory relief pursuant to 28 U.S.C. 2201 and 2202, and Federal Rule of Civil Procedure 57.

## IV. FACTS

10. On November 6, 2007, Manuel A. Benavidez brought suit against the City of Irving, its mayor, and its city council members challenging the legality of Irving's at-large electoral system under Section 2 of the Voting Rights Act. Benavidez alleged that the at-large electoral system had the effect of diluting the voting power of the Hispanic voters, and, consequently, denied them an opportunity to elect a representative of their choice.

11. To prove his claim under the Voting Rights Act, Benavidez presented what he called Plan 6-2-1 to the court. This proposed plan would break up the eight at-large city council seats into six single-member districts, two at-large districts, and a single mayor. One of these single-member districts was torturously gerrymandered to create what Benavidez claimed would be a majority Hispanic district.

12. Irving vigorously resisted Benavidez' claims. Among other things, Irving argued that the majority Hispanic district urged by Benavidez would contain a much smaller number of citizens of voting age than the remaining five districts. Irving contended this would unconstitutionally dilute the votes of the citizens in these five districts. The court (improperly) rejected this argument, ultimately finding that Irving's at-large electoral system violated the Voting Rights Act.

13. Faced with the prospects of a judicially-imposed electoral scheme followed by a long and expensive appeal, Irving acquiesced. As part of a settlement agreement, Irving agreed to propose a substantially similar version of Plan 6-2-1 (the "Plan") to the district court as part of a settlement agreement. This Plan was recently given pre-approval by the United States Department of Justice and will be in place in the next set of Irving council member elections.

14. The Plan divides the City of Irving into six districts based on total population. District 1 is the majority Hispanic district. Even though District 1 is roughly equal to the other five districts with respect to total population, there is a significant disparity between the number of citizens of voting age in District 1 and the remaining districts. This disparity is a direct function of the fact that, according to the latest census data, approximately 60% of the adult Hispanic residents of Irving are not citizens.

15. The greatest disparity (between the number of citizens of voting age) exists between District 1 and Districts 5 and 6. According to the Plan, 13,168 of the 20,930 persons of voting age living in District 1 are Hispanic. Factoring in the census

finding that 60% of Irving's adult Hispanic residents are non-citizens yields an estimated total of 13,029 citizens of voting age residing in District 1.  In contrast, when the same calculation is applied to Districts 5 and 6, it produces citizens of voting age populations of 22,932 and 23,884, respectively.

16. The Plan thus substantially dilutes the votes of Irving's citizens, weighting each one differently based solely upon where he or she lives.  Indeed, the votes of citizens living in District 1 are worth nearly twice as much as the votes of citizens residing in Districts 5 and 6.

17. This result directly violates the "one-person, one-vote" equal protection principal at the heart of the Fourteenth Amendment.  As the Supreme Court has observed, "with respect to the allocation of legislative representation, all voters, as citizens of a State, stand in the same relation regardless of where they live."[3]  Accordingly, "[w]eighting the votes of citizens differently, by any method or means, merely because of where they happen to reside, hardly seems justifiable."[4]

18. Yet "weighting the votes of citizens differently . . . merely because of where they happen to reside"[5] is precisely what the Plan does here.  This Plan is unconstitutional and cannot stand.

## V.     CAUSES OF ACTION

### A.     Fourteenth Amendment Claim: One Person, One Vote

19. The Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

20. By weighting the votes of its citizens differently merely because of where they happen to reside, Irving has violated the Equal Protection clause of the Fourteenth Amendment.  As a result of the Plan, the votes of a citizen living on one street in Irving

---

[3] *Id.* at 565.
[4] *Id.* at 563.
[5] *Id.*

will be worth nearly twice as much as the vote of another citizen living on another street only a few hundred feet away. This is unconstitutional.

21. Plaintiffs seek declaratory relief pursuant to 28 U.S.C. 2201 and 2202, and Federal Rule of Civil Procedure 57 and ask the Court to declare the City of Irving's current 6-2-1 Plan for the election of city council members to be unconstitutional and of no further force and effect.

## VI.   PRAYER

Plaintiffs hereby request that this Court award the following relief:

 a. Declare the City of Irving's current 6-2-1 Plan for the election of city council members to be unconstitutional and of no further force and effect;

 b. Award reasonable attorneys' fees and costs of suit incurred herein, including costs of both consulting and testifying expert witness fees and expenses against all Defendants, as authorized by law under 42 U.S.C. 1983, 42 U.S.C. 1988, and 42 U.S.C. 1973*l*(e).

 c. Such other and further relief, both special and general, at law or in equity, to which Plaintiffs may be justly entitled.

DATE: July 16, 2010                                     Respectfully submitted,

                                                          */s/ Kent D. Krabill*
                                                        Kent D. Krabill
                                                        State Bar No. 24060115
                                                        Jeremy A. Fielding
                                                        State Bar No. 24040895
                                                        John T. Cox III
                                                        State Bar No. 24003722
                                                        LYNN TILLOTSON PINKER & COX, LLP
                                                        2100 Ross Avenue, Suite 2700
                                                        Dallas, Texas 75201
                                                        Telephone: 214-981-3800
                                                        Facsimile: 214-981-3839

                                                        **ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that he conferred with C. Robert Heath, counsel for the Defendant, and Nina Perales, counsel for Defendant-Intervenors, and counsel has provided written consent (as required by FRCP 15(a)(2)) for this Second Amended Complaint. The written consent is attached hereto as Exhibit A.

Certified to this 16th day of July, 2010.

/s/ Kent D. Krabill
Kent D. Krabill

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of July, 2010, a true copy of the foregoing was served by the Court's ECF system to all counsel of record in this case.

C. Robert Heath
State Bar No. 09347500
BICKERSTAFF, HEATH, DELGADO & ACOSTA, LLP
3711 S. MoPac Expressway, Bldg One, Ste 300
Austin, Texas 78746
Facsimile: 512.320.5638
*Attorney for Defendant, City of Irving, Texas*

Charles R. Anderson
State Bar No. 01170500
City Attorney
CITY OF IRVING, TEXAS
825 W. Irving Blvd.
Irving, Texas 75060
Facsimile: 972.721.2750
*Attorney for Defendant, City of Irving, Texas*

Nina Perales
State Bar No. 24005046
MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND
110 Broadway St., Suite 300
San Antonio, Texas 78205
Facsimile: 210.224.5382
*Attorney for Defendant-Intervenors*

/s/ Kent D. Krabill
Kent D. Krabill