IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KEITH A. LEPAK, MARVIN RANDLE, DAN CLEMENTS, DANA BAILEY, KENSLEY STEWART, CRYSTAL MAIN, DAVID TATE, VICKI TATE, MORGAN McCOMB, and JACQUALEA COOLEY, § § § § § § § | | |
| Plaintiffs, § | | |
| v. § | | |
| CITY OF IRVING, TEXAS, § § | CIVIL ACTION NO. 3:10-CV-0277-P | |
| Defendant, § | | |
| v. § | | |
| ROBERT MOON, RACHEL TORREZ-MOON, MICHAEL MOORE, GUILLERMO ORNELAZ, GILBERT ORNELAZ and AURORA LOPEZ, § § § § § § | | |
| Defendant-Intervenors. § | | |

## MEMORANDUM OPINION AND ORDER

Now before the Court are (1) Plaintiffs' motion for summary judgment (Docket # 25); (2) City of Irving's motion for summary judgment (Docket # 29); (3) Defendant-Intervenors' motion for summary judgment (Docket # 35); and (4) the United States's brief as amicus curaie (Docket # 41). After careful consideration of the facts, briefing and applicable law, the Court hereby GRANTS the City of Irving's motion for summary judgment.

1

## BACKGROUND

After conducting a bench trial in *Benavidez v. City of Irving*, this Court held that the City of Irving ("City" or "Irving") violated Section 2 of the Voting Rights Act by electing its city council members on an at-large basis. The Court found the City's at-large system effectively denied Hispanic voters an equal opportunity to elect representatives of their choice. *See City of Irving v. Benavidez*, 638 F. Supp. 2d 709, 732 (N.D. Tex. 2009). As a result of the ruling, the parties agreed on a new election plan (the "Plan") that divided the City into six single-member districts, two at-large districts, and a single mayor. The Plan divides the City into six districts that are relative in total population. However, while the total population numbers are roughly equal between districts, the CVAP (citizen voting age population) in District 1 is much less than the CVAP in the other districts.

## DISCUSSION

According to Plaintiffs, the Plan substantially dilutes the votes of Irving's citizens by weighing votes differently depending on where a person lives. They argue the Plan violates the "one-person, one-vote" equal protection principle of the Fourteenth Amendment because the districts' sizes are based on total population rather than on CVAP. Plaintiffs explain that because District 1 has approximately half the CVAP as at least two other districts, the council member from District 1 can be elected with approximately half as many votes as the council members of the other districts. Plaintiffs conclude that because the voters in District 1 have nearly twice as much voting power as the voters in the other districts, the City is impermissibly weighing the votes of citizens differently merely because of where they reside. At the core of this dispute is whether the City is constitutionally permitted to draw districts based on equal populations as opposed to equal numbers of voters.

2

In their briefing, Plaintiffs repeatedly cite to *Reynolds v. Sims* for the principle that "[w]ith respect to the allocation of legislative representation, all voters, as citizens of a State, stand in the same relation regardless of where they live." 377 U.S. 533, 565 (1964).[1] From this passage, Plaintiffs conclude districts must be drawn to contain equal numbers of citizens with the ability to vote. They insist that the Court has unequivocally held the one-person, one-vote requirement is premised on the principle of electoral equality. (Docket # 25 at 11.)

The United States, as *amicus curiae*, argues the Supreme Court also recognized in *Reynolds v. Sims* that total population is an appropriate baseline to use and satisfies the one-person, one-vote principle. (Docket # 32-1 at 2-3 citing 377 U.S. at 542 n.7 & 545-46.) Reynolds states that "[a]s a basic constitutional standard, the Equal Protection Clause requires that the [seats] must be apportioned on a population basis." *Reynolds*, 377 U.S. at 568. The United States further explains that each and every jurisdiction in Texas, some 340 state, county, and municipality, that has applied for preclearance to the Department of Justice under Section 5 of the Voting Rights Act uses total population in the districting process as the basis for determining whether population is equal among districts. (Docket # 32-2.)

The *Reynolds* court and others like it that have used the terms "citizens" and "persons" interchangeably were not dealing with whether the one-person, one-vote principle requires citizen-voter equality or representational equality. Rather, they were "dealing with situations in which total population was presumptively an acceptable proxy for potentially eligible voters." *Chen v. City of Houston*, 206 F.3d at 525 (5th Cir. 2000).

---

[1] Plaintiffs also quote the *Reynolds* passage: "The basic principle of representative government remains and must remain unchanged – the weight of a citizen's vote cannot be made to depend on where he lives." 377 U.S. at 567.

3

One case that has addressed this precise issue is the Fifth Circuit case of *Chen v. City of Houston*, in which the plaintiffs argued the city violated the "one-person, one-vote" requirement when it designed its districts to equalize total population instead of CVAP and when the city knew certain districts had extremely high ratios of noncitizens. *Chen*, 206 F.3d 502, 522. The Fifth Circuit recognized the "Supreme Court has been somewhat evasive in regard to which population must be equalized." *Chen*, 206 F.3d at 524. The court acknowledged there is "ample language in the [Supreme Court] opinions that strongly implies that it is the right of the individual potential voter that must be protected." *Id.* at 525. "But, . . . other language can be found that implies that representational equality is the ideal." *Id.* After conducting an in-depth analysis of the laws and legislative history governing the case, the *Chen* court held that the choice between using total population or CVAP should be left to the legislative body for determination.

The Fourth and Ninth Circuits have also addressed the issue, with the same outcome. The Ninth Circuit found that total population is a permissible method for measuring population when known significant concentrations of those not eligible to vote exist. *See Garza v. County of Los Angeles*, 918 F.2d 763, 775-76 (9th Cir. 1990). The Fourth Circuit, when dealing with the analogous issue of districting when people below the voting age were unevenly distributed, stated that the choice between total population or a measurement of potential voters must be left to the legislative body. *See Daly v. Hunt*, 93 F.3d 1212, 1227 (4th Cir. 1996).

Plaintiffs try to distinguish *Chen* from this case by arguing in a footnote that the variance between population and voters in *Chen* is considerably less than the variance in this case. They contend the "City of Houston had not diluted the vote of citizens by approximately half, as the City of Irving has done here. Rather, the *Chen* court simply noted that the 'maximum variance' of CVAP

4

between the City of Houston's districts 'exceeds [a] ten percent threshold.'" (Docket # 25 at 15 n. 18.) Plaintiffs infer the City of Houston's variance between population and eligible voters was just slightly more than ten percent, whereas here, the variance is considerably higher. Plaintiffs then contend the *Chen* court called the CVAP vote dilution claim "extremely close and difficult." (Docket # 25 at 15 n. 18.)

First, the inference Plaintiffs make – that the maximum variance in *Chen* was close to ten percent – is not supported by the actual evidence. The petition for writ of certiorari in *Chen* states that, when measured by CVAP, the maximum deviation between districts in the challenged Houston plan was 32.5%. Appellate Pet. *Chen v. City of Houston* (No. 99-1946), 2000 WL 34014393 at *3.

Second, the Fifth Circuit did not characterize its CVAP decision as a close call. It described the racial gerrymandering claim (*Shaw* claim) as "extremely close and difficult." *Chen*, 206 F.3d at 505. Later in the opinion, the court does acknowledge that "while this [CVAP] issue is a close question, we find that the choice of population figures is a choice left to the political process." *Id.* at 523. However, the "close question" was not whether the amount of vote dilution was extreme enough to warrant judicial intervention. The "close question" referred to whether the courts should intervene in the selection of a population baseline. The Fifth Circuit held they should not. *Id.*

The Court also rejects Plaintiffs' attempt to limit the *Chen* holding to "the specific circumstances of that case." (Docket # 25 n. 18.) Though the court does state at the beginning of its opinion that "the use of total population to track the size of the districts does not, under these circumstances, violate the Equal Protection Clause," it concludes its opinion with the following language, "But in [the] face of the lack of more definitive guidance from the Supreme Court, we conclude that this eminently political question has been left to the political process." *Chen*, 206 F.3d

5

at 505, 528. Plaintiffs have not demonstrated that, under these circumstances, the Fifth Circuit would require this court to intervene in the political process and judicially mandate Irving to track the size of the districts by CVAP instead of by population.

For these reasons, the Court hereby GRANTS summary judgment for the City of Irving, DENIES summary judgment for Plaintiffs, and DENIES Defendant-Intervenors' motion for summary judgment as MOOT.

It is SO ORDERED, this 11th day of February 2011.

_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE